STATE v. CARPENTER.

No. 7300.

Supreme Court of Idaho.

Jan. 2, 1947.

278

Marshall Chapman and Lawrence B. Quinn, both of Twin Falls, for appellant.

Frank Langley, Atty. Gen., and J. R. Smead, Asst. Atty. Gen., for respondent.

GIVENS, Justice.

Achsa Shryer and Joan Carpenter were jointly informed against, prosecuted and convicted of carrying hacksaw blades to prisoners to aid their escape, in violation

[1] "Every person who carries or sends into a prison anything useful to aid a prisoner in making his escape, with intent thereby to facilitate the escape of

of Section 17-807, I.C.A.[1] Joan Carpenter alone has appealed herein.

At the time fixed for the pronouncement of sentence, appellant, through her attorney, applied to the court for leniency under Section 19-2501, I.C.A., as amended by the 1943 S.L. Chap. 14, page 43.[2] Whereupon, the court pronounced judgment as follows: "It is thereupon ordered, adjudged and decreed, that the said Achsa Shryer and Joan Carpenter are guilty of Carrying to Prisoner things to aid Escape and that they each be punished by imprisonment in the Penitentiary of the State of Idaho, for the term of not less than one year nor more than five years, but that the sentence be commuted, and that they each be confined in the Twin Falls County Jail for a period of four months."

The State moved to dismiss the appeal because appellant, by seeking and accepting the commutation of sentence, forfeited and waived her right of appeal.

Conceding that acceptance of executive pardon or parole or judicial parole has been held to either limit or annul appellant's right of appeal from the judgment of conviction, Brooks v. State, 51 Ariz. 544, 78 P.2d 498, 117 A.L.R. 929, 138 A.L.R. 1102, herein there was merely a reduction of the sentence, leniency having been requested by the jury and urged by appellant.

There must be a valid judgment of conviction to support a valid penalty. The entire pronouncement was at one time and all part of one judicial transaction and no authority has been presented that holds under this precise situation appellant has been, and no valid reason has been suggested why appellant should be, deprived of the right to question the validity of the conviction.

 Neither reason nor justice supports or authorizes the proposition that a defendant by seeking or securing a minimal sentence jeopardizes or sacrifices the right to test by appeal the legality of his conviction, an essential condition precedent to sentence. State v. Jacobson, 348 Mo. 258, 152 S.W.2d 1061, 138 A.L.R. 1154. A contrary holding would mean a defendant could not seek a light sentence, even though recommended by the jury, but must remain silent when sentence is pronounced lest he suffer the loss of appeal on the merits, however erroneous the trial or complete his innocence. Appellant does not question the sentence as such, and no assignment of error challenges the sentence in any particular, hence whether the court abused its discretion in commuting the sentence is not before us. The motion to dismiss the appeal, therefore, is denied.

The general circumstances surrounding the offense of which appellant was convict-

---

[1] any prisoner confined therein, is guilty of a felony." Sec. 17-807, I.C.A.

[2] "Whenever any person shall have been convicted, or enter a plea of guilty in any District Court of the State of Idaho, of or to any crime against the laws of the State, except those of treason or murder * * * the court may, in its discretion, upon application by the defendant, commute the sentence, confine the defendant in the county jail, * * *." Sec. 19-2501, I.C.A.

ed were that one Clyde Pease and Ace Jacobson were being held in the City Jail in Twin Falls on a felony charge for California authorities. Appellant had been arrested previously with Pease on a vagrancy charge and incarcerated. She was released upon payment by her of her fine. She thereafter visited the jail and claimed Jacobson threatened her if she did not secure and bring to them hacksaw blades, which threats appellant contends her claimed common-law-husband Pease told her she had better comply with. She purchased the blades and with Achsa Shryer, formerly Jackie Smith, went that evening to the jail. Each woman said the other put the blades through a window or hole in the wall into the City Jail as directed. The blades were discovered and four of the bars of one of the windows in the cell block were sawed through and bent up. The arrest of appellant and Achsa Shryer, Aces' acquaintance, and self-accusatory admissions followed.

Appellant in numerous assignments of error contends the evidence is insufficient to sustain her conviction, particularly in this; that she and Clyde Pease were married and she aided in procuring and passing the hacksaw blades into the City Jail where he and Ace Jacobson were confined, under threats made by Jacobson and so affirmed by her husband as to absolve her from criminal complicity by reason of Section 17-201, subd. 7, I.C.A.[3]; and that the court erred in refusing certain requested responsive instructions.

The question of conjugal status and to what extent, if any, appellant acted under threats vicariously acquiesced in by Pease, or was dominated by his commands or coercion, were questions of fact to be determined by the jury. State v. Hendricks, 32 Kan. 559, 4 P. 1050 at 1054. Appellant testified in open court she participated in purchasing and passing the hacksaw blades into the jail and the evidence is of such a nature as to support the jury in rendering the verdict.

Section 17-201, subd. 7, supra, differs from the common law, 41 C.J.S., Husband and Wife, p. 717, § 222, note 20. Obviously, therefore, cases interpreting or applying the common law or differing statutes are not pertinent.

The instructions given by the court were fully favorable to appellant and sufficiently, substantially and adequately covered these phases of the controversy.[4]

---

[3] "All persons are capable of committing crimes, except those belonging to the following classes:

\* \* \* \* \* \* \*

"7. Married women (unless the crime be punishable with death) acting under the threats, command, or coercion of their husbands. \* \* \*." Section 17-201, subd. 7, I.C.A.

[4] "You are instructed that if you find from the evidence that the defendant, Joan Carpenter, and Clyde Pease mutually assumed the marital rights, duties and obligations and that the parties held themselves out to the world as husband and wife and cohabitated together as

State v. Sayko, 37 Idaho 430, 216 P. 1036, and 71 A.L.R. 1116.

Hence, there was no error in rejecting the requested instructions. State v. Fleming, 17 Idaho 471, at page 489, syl. 9, 106 P. 305; State v. Reel, 19 Idaho 463, at page 464, 113 P. 721; State v. Willis, 24 Idaho 252, at page 264, syl. 5, 132 P. 962; State v. O'Neil, 24 Idaho 582, at page 600, 135 P. 60; State v. Curtis, 29 Idaho 724, at page 734, 161 P. 578; State v. Petrogalli, 34 Idaho 232, at page 237, 200 P. 119; State v. Black, 36 Idaho 27, at page 34, 208 P. 851; State v. Sayko, supra; State v. Cosler, 39 Idaho 519, at page 524, 228 P. 277; State v. George, 44 Idaho 173, at page 177, 258 P. 551; State v. Pasta, 44 Idaho 671, at page 678, 258 P. 1075; State v. Stevens, 48 Idaho 335, at page 350, 282 P. 93; State v. Farris, 48 Idaho 439, at page 446, 282 P. 489; State v. Copenbarger, 52 Idaho 441, at page 456, 16 P.2d 383; State v. Brown, 53 Idaho 576, at page 580, 26 P.2d 131; State v. Richardson, 56 Idaho 150, at page 158, 50 P.2d 1012; State v. Howard, 57 Idaho 381, at page 385, 65 P.2d 764; State v. Vanek, 59 Idaho 514, at page 520, 84 P.2d 567; State v. Frank, 60 Idaho 774, at page 781, 97 P.2d 410.

Consequently, the judgment of conviction is affirmed.

BUDGE and MILLER, JJ., and SUTPHEN, D. J., concur.

---

such, both of said parties having the legal right to contract marriage, then such facts are sufficient to establish the relationship of husband and wife even though said parties did not have a marriage license or enter into a formal marriage ceremony.

"You are instructed that where two parties, both competent to enter into a marriage status, consummate a common law marriage, they are just as effectually married to one another as if they had been married pursuant to a marriage license and a marriage ceremony conducted by a minister or authorized civil officer and thereafter the marriage remains in full force until it is dissolved by law or the death of one of the parties and any subsequent acts of concealment or maintenance of secrecy concerning the relationship between the parties is not sufficient to destroy a marital status after it has once been assumed in contemplation of law.

"You are instructed that if you find and believe from the evidence that the defendant, Joan Carpenter, at the time of the alleged offense, was the wife of one Clyde Pease, and that such offense was committed in the presence of her husband under threats, coercion or compulsion by him, and that she did not willingly commit such offense, if you find that the same was committed, then such defendant, Joan Carpenter, would not be liable therefor.

"You are further instructed that if such alleged offense was committed by the defendant, Joan Carpenter, in the presence of her husband, then a presumption of law arises that she acted under coercion by her husband; however, such presumption is rebuttable, and may be overcome by other facts and circumstances appearing in evidence. You are further instructed that the words 'presence of her husband' do not necessarily mean the immediate presence of her husband, it being sufficient if he were near enough during the course of the transactions to influence her conduct, or, if the acts complained of were completed in his presence, although not begun in his presence." Instructions Nos. 13, 14, and 15.

HOLDEN, Justice (dissenting).

Achsa Shryer and Joan Carpenter were informed against, tried and convicted in the District Court of the Eleventh Judicial District of the State of Idaho, in and for Twin Falls County, of the crime of carrying certain articles (steel hacksaw blades) into the jail of that County, useful to aid a prisoner therein, one Clyde Pease, to escape. Following conviction and sentence to the penitentiary for not less than one nor more than five years, respective counsel, in open court, both defendants being present, made application for leniency, a showing being made in support of the Carpenter application. The applications were argued and submitted, whereupon the court entered the following judgment: "It is thereupon ordered, adjudged and decreed, That the said Achsa Shryer and Joan Carpenter are guilty of Carrying to Prisoner things to aid Escape and that they each be punished by imprisonment in the Penitentiary of the State of Idaho, for the term of not less than one year nor more than five years, but that the sentence be commuted, and that they each be confined in the Twin Falls County Jail for a period of four months." The appeal to this court is from the judgment.

Respondent moves to dismiss the appeal upon the ground, among others, "that by her own act in making application for and inducing the trial court to exercise its discretion, under Section 19-2501, I.C.A., as amended, and to exercise such discretion by commuting the said sentence, the appellant, Joan Carpenter, accepted her conviction of the said offense and thereby waived her right of appeal from such judgment of conviction."

Section 19-2501, I.C.A., before amendment, provided: "Parole.—Whenever any person shall have been convicted of any crime against the laws of this state except those of treason or murder, and the defendant has never before been convicted of a felony, the court may in its discretion, commute the sentence and confine the defendant in the county jail, or, if the defendant is of proper age, in the state industrial school, suspend the execution of judgment or withhold judgment on such terms and for such time as it may prescribe, and, in either event, may put the defendant on probation in the charge of one of the probation officers of the juvenile court of the county in which the court is sitting or other probation officer, or or any other proper person selected and designated for that purpose."

This Section was amended in 1943 (Session Laws 1943, Chapter 14, page 43), *several changes and additions, italicized, being made.* As so amended it provides: "Parole.—Whenever any person shall have been convicted, *or enter a plea of guilty in any District Court of the State of Idaho, of or to* any crime against the laws of the State, except those of treason or murder * * * the court may, in its discretion, *upon application by the defendant,* commute

the sentence, confine the defendant in the county jail, or * * * suspend the execution of the judgment, or withhold judgment on such terms and for such time as it may prescribe * * * and may put the defendant on probation in charge of * * * *some* proper person selected and designated *by the court* for that purpose, *and make such orders relative thereto as the Court in its sound discretion deems necessary and expedient."*

Respondent argues: "First, where a defendant, after conviction or plea of 'guilty', makes application under Section 19-2501, as amended by Chapter 14, Session Laws, 1943, to the Court to exercise the discretion imposed in it by that statute, and the Court does exercise that discretion in defendant's favor and commutes the sentence from the statutory penalty, in this case one to five years in the penitentiary, to four months imprisonment in the county jail can the defendant appeal from that judgment; or, by the making of his application for, and thereby invoking the exercise of, the discretion of the Court, does the defendant waive his right of appeal; or, further, if defendant has the right of appeal, is the appeal limited to a review of whether the discretion of the Court was lawfully exercised?"

It will be noted Section 19-2501, I.C.A., before amendment, did not require an application by a defendant. It provided: *"The court may in its discretion, commute the sentence and confine the defendant in the county jail"*, but that by the amendment it is provided the court may, "In its discretion, *upon application by the defendant* (emphasis added), commute the sentence, confine the defendant in the county jail, or * * * suspend the execution of the judgment, or withhold judgment * * *." From which it appears that before amendment, the court was authorized to act, on its own motion, without an application, but that after and under the amendment the jurisdiction of the court to act is invoked, or set in motion, by an application. It further appears counsel for appellant so understood in that they, as her attorneys, made the required application and, further, here argue that "the exercise of this authority can only be put in motion by the defendant." But it is insisted the application was for a parole, and that when the discretion of the court is so "called into being by defendant, the court may then exercise the same on behalf of the defendant or refuse to exercise it, and in neither case is the defendant, insofar as his right of appeal is concerned, bound by the ultimate sentence imposed by the court."

It will have been observed Section 19-2501, supra, as amended (Session Laws 1943, Chapter 14, page 43), vests jurisdiction in the trial court, upon application by a defendant, to:

1. Commute the sentence.

2. Imprison in the county jail.

3. Suspend execution of the sentence.

4. Parole the defendant by withholding judgment and putting him "on probation in charge of * * * some proper person selected and designated by the court for that purpose, and make such orders relative thereto as the Court in its sound discretion deems necessary and expedient."

While, as will have been noticed, the Statute provides for the parole of a convicted defendant, appellant did not make such an application. The record shows she made an application for *leniency*. Funk & Wagnall's New Standard Dictionary thus defines leniency: "The state or quality of being lenient; lenity; forbearance; mildness." It defines lenient: "Of merciful disposition; proceeding from or showing a merciful disposition; disinclined to or refraining from severity; not harsh, gentle; mild; indulgent."

By her application for leniency, appellant asked the court to be lenient; in other words, not to be harsh or severe in the matter of imposing sentence. That the court so understood her application conclusively appears from the judgment itself in that, after imposing a sentence of not less than one nor more than five years, it at once commuted the sentence to four months in the county jail.

And, furthermore, that appellant and her counsel also understood the application for leniency to be an application for commutation of sentence rather conclusively appears from the fact they at no time gave the trial court the slightest hint appellant's application for leniency was, in reality, an application for a parole, and not for commutation of sentence, or that the court had misunderstood the nature of her application.

I come now directly to a consideration of the question as to whether, where, as in the case at bar, an application is made for commutation of sentence and the application is granted upon a showing made by the applicant, applicant thereby waived the right to appeal; and, further, and in connection with that question, if the right to appeal is not waived, is the appeal limited to determining whether the trial court did or did not, in granting the application, abuse the sound, legal discretion vested in it by statute?

Respondent contends "the legislature intended to make it optional with a convicted defendant either to appeal from the judgment or to accept it and seek clemency at the hands of the court, and did not intend that such a defendant might pursue both courses in a case where such clemency should in fact be obtained upon his voluntary application, before appealing," citing State v. Yockey, 57 Idaho 497, 66 P.2d 111. On the other hand, appellant insists this court did not hold in State v. Yockey, supra, "that one who invokes the discretion of the court cannot appeal from such result."

While State v. Yockey, supra, was decided prior to the amendment of the statute under consideration (Chapter 14, 1943 Session Laws, page 43), the amendment in no

way affects the decision insofar as the question under discussion is concerned, in that the only difference between the old statute and the new, on the question of the exercise of sound, legal discretion, is that under the old the court was authorized to act on its own motion and under the new, jurisdiction to act is set in motion by the application of the defendant; and, further, and notwithstanding the statute (Section 19-2501), before amendment, made no provision for the making of an application by a defendant, an application was, nevertheless made in State v. Yockey, supra, and entertained by the court, and evidence adduced in support of the same as in the case at bar. The trial court, however, refused to grant leniency and sentenced Yockey, as well as his co-defendant (two boys, aged nineteen and twenty years), "To the penitentiary for the statutory indeterminate term of one to fifteen years." This court, after a rather complete review of the evidence adduced in support of the application, pointed out that "Under the facts and circumstances of this case as affirmatively disclosed by the record that it clearly appears that the court did not exercise any such discretion as contemplated under I.C.A., § 19-2501, raising a question of law which may be reviewed on appeal."

It must be kept in mind the record in the instant case shows appellant did not make an application for either a pardon or parole. Instead, and as also shown by the record, she made an application for commutation of sentence, submitting documentary evidence in support thereof. It thus appears the case at bar and State v. Yockey, supra, are identical in that both an application for commutation of sentence was made and documentary evidence submitted in support of the application. In State v. Yockey, supra, it was held the trial court, under the evidence submitted in support of the application for commutation of sentence, did not exercise the discretion (sound, legal) vested in it by statute (Section 19-2501, I.C.A.), and reversed the judgment in part. In other words, this court held that on appeal, where an application for commutation of sentence is made (as in the case at bar), the appeal is limited to a determination of the question as to whether the trial court did, or did not, abuse the sound, legal discretion vested in it by law.

It must also be kept in mind respondent's motion, in the instant case, as above pointed out, presents *two* questions for decision:

(1) Did appellant, by making an application for commutation of sentence, waive the right to appeal?

(2) If the right to appeal is not waived, is the appeal limited to determining whether the trial court did, or did not, abuse the sound, legal discretion vested in it by law by granting the application?

Section 19-2703, I.C.A., without any exceptions whatever, grants an appeal from a final judgment. Hence, respondent's motion, so far as a dismissal of the appeal is concerned, should be denied. But that does

not dispose of the question as to whether the trial court did, or did not, abuse its discretion. That question the majority do not decide, saying the question is not presented.

Furthermore, the record shows appellant remained silent when the trial court commuted her sentence. This court held in Shaddy v. Daley, 58 Idaho 536,.540, 76 P.2d 279, 281: "A litigant is not permitted to remain silent under such circumstances with a view to accepting the benefits of a judgment if he wins and of having it vacated and set aside if he loses."

There is neither reason nor justice in permitting a litigant "to remain silent * * * with a view to accepting the benefits of a judgment if he wins and of having it vacated and set aside if he loses."